IN THE COURT OF CRIMINAL APPEALS


OF TEXAS
 





NO. WR-43,550-03






EX PARTE KENNETH WAYNE MORRIS, Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS


FROM HARRIS COUNTY






 Price, J., filed a statement dissenting to the dismissal of the application in which
Womack, J., joined.


DISSENTING STATEMENT



 This is the applicant's second subsequent post-conviction application for writ of
habeas corpus, challenging his conviction for capital murder. (1) He is scheduled to be
executed this evening and has, accordingly, also filed a motion to stay his execution. While
I am not pleased that he has waited until such a late hour to press his claim, I do believe that
he has identified sufficient specific facts to establish that the claim he presently raises could
not have been brought to us in his previous applications because the factual basis was not
available on the dates he filed those applications. (2) Unlike the Court, I also believe that the
applicant has made out a prima facie case for relief. Because the Court does not grant the
applicant's requested stay of execution and remand the cause for further development, I
respectfully dissent.

 The applicant alleges that the District Attorney of Harris County based his decision
to seek the death penalty in his capital murder case on the impermissible basis of his race. 
The applicant is an African-American. He was tried in 1993. He alleges that during an
eight-year period of time that includes 1993, the Harris County District Attorney made the
discretionary decision to pursue the death penalty against black defendants who had been
indicted for capital murder at a rate that was 75% greater than the rate at which he sought the
death penalty against white defendants who had been indicted for capital murder during the
same period. The factual basis of his claim is a statistical study that was reported in the
Summer 2008 volume of the Houston Law Review. (3) The applicant relies upon the Supreme
Court's opinion in McCleskey v. Kemp. (4) In McCleskey, the Supreme Court rejected a claim
that the whole judicial process unconstitutionally discriminated against African-Americans
in the selection of those who would be prosecuted for capital murder, at least in part because
so many "entities" are involved. (5) The applicant alleges that, because the Houston Law
Review study is more focused on the discretionary decisions of a single district attorney,
made over a distinct period of time, he has made out an equal protection claim under the
Fourteenth Amendment under the criteria identified in McCleskey. 

 The Court does not dismiss the applicant's subsequent claim for failing to allege
previously unavailable facts. Instead, the Court finds that the applicant fails to satisfy the
judicial gloss we have de facto placed upon the statutory authorization of subsequent writs
in capital cases, namely, that they must also "make a prima facie showing of possible merit." (6) 
I disagree. The applicant must show that the District Attorney's decisions to seek the death
penalty against him had a discriminatory effect and was the product of a discriminatory
purpose. (7) He makes a prima facie showing of discriminatory effect by virtue of his showing
that between 1992 and 1999, the District Attorney sought the death penalty against blacks
at 1.75 times the rate at which he sought the death penalty against whites. (8) It is less apparent
that this statistical anomaly will also suffice, by itself, to make out a prima facie case for
purposeful discrimination. (9) But the applicant alleges other instances of racial discrimination
on the part of the Harris County District Attorney's Office during the same period of time
that provides at least some inferential support to the claim that the decision to seek the death
penalty against blacks at a disproportionate rate was racially motivated. I would give the
applicant the benefit of the doubt on this question, grant his motion to stay the execution, and
remand the cause to the convicting court for full evidentiary development under Article
11.071, Section 5(a)(1).

 Because the Court will not, I respectfully dissent.


Filed: March 4, 2009

Do Not Publish 
1. Tex. Code Crim. Proc. art. 11.071.
2. Id., § 5(a)(1).
3. Scott Phillips, Racial Disparities in the Capital of Capital Punishment, 45 Hous. L.R. 807
(2008). This article actually acknowledges that "the DA pursued death against black defendants and
white defendants at the same rate," but goes on to contend that "controlling for confounders reveals
disparities in the treatment of black defendants: the odds ratio for black defendant changes from .91
in the bivariate logistic model to 1.75 in the multivariate logistic model. The transformation occurs
because black defendants committed murders that were less serious." Id. at 830.
4. 481 U.S. 279 (1987).
5. Id., at 294-95 & n.15.
6. See Ex parte O'Brien, 190 S.W.3d 677, 683 (Tex. Crim. App. 2006) (Cochran, J., concurring
in dismissal).
7. McCleskey v. Kemp, supra, at 292.
8. See Hunter v. Underwood, 471 U.S. 222, 227 (1985) (state constitutional provision that
caused disenfranchisement of blacks at 1.7 times the rate of whites provided "indisputable" proof
of discriminatory impact).
9. The applicant cites Belmontes v. Brown, 414 F.3d 1094, 1127 (9th Cir. 2005), for the
proposition that his statistical evidence is forceful enough to constitute prima facie evidence of
purposeful discrimination. As I read the Ninth Circuit's opinion, however, the court assumed
without deciding that particular question.